*01 CV 4927*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE STARLINK CORN PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1403 |
| | Judge James B. Moran |
| This Document Relates To:    ALL NON-STARLINK FARMER ACTIONS | |

**F I L E D**

FEB 0 6 2003

MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

**DOCKETED**

FEB 2 5 2003

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

**COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934

**MILBERG WEISS BERSHAD
HYNES & LERACH LLP**
One Pennsylvania Plaza
New York, NY 10119

**SEEGER WEISS LLP**
One William Street
New York, NY 10004

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016

**FARMER PLAINTIFFS' LIAISON COUNSEL**



306482

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

History of the Litigation ....................................................................................................... 2

Negotiation of the Settlement ............................................................................................... 4

The Proposed Settlement Consideration ............................................................................... 4

The Settlement Class ............................................................................................................. 5

ARGUMENT .......................................................................................................................... 6

I.      THE PROPOSED IMPLEMENTATION ORDER SHOULD BE APPROVED ............... 6

II.     THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR
        PRELIMINARY APPROVAL ......................................................................................... 6

        A.      The Settlement Provides Substantial Benefits That Fall
                Squarely within the Range of Recoverable Damages
                Estimated by Plaintiffs .................................................................................... 8

        B.      Continued Litigation Would Be Expensive, Prolonged and Risky ................. 10

        C.      The Settlement Is the Product of Arm's Length Negotiations ....................... 11

        D.      Plaintiffs' Counsel Recommend the Proposed Settlement
                Because It Is in the Best Interests of the Settlement Class ........................... 12

III.    CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS UNDER
        RULE 23 IS APPROPRIATE ....................................................................................... 13

        A.      All Prerequisites for Class Certification Under Rule 23(a) Are Met ............. 14

                1.      The Settlement Class Is Sufficiently Numerous to Render
                        Joinder of All Members Impracticable ............................................. 14

                2.      Common Questions of Law and Fact Exist ...................................... 14

i

3.  The Plaintiffs' Claims Are Typical of the Settlement
    Class Claims ...................................................................................15

4.  The Plaintiffs Will Fairly and Adequately Protect
    the Interests of the Settlement Class ...........................................16

B.  The Proposed Class is Maintainable Under Rule 23(b)......................................18

1.  Common Questions of Fact and Law Predominate Over the
    Individual Questions Presented in This Action..........................................18

2.  Class Treatment Is the Superior Method of Adjudication ........................21

IV.  The Court Should Approve the Proposed Notice to Class Members................................23

CONCLUSION.................................................................................................24

## TABLE OF AUTHORITIES

### FEDERAL CASES

PAGE

*Amchem Products v. Windsor,*
521 U.S. 591 (1997) ........................................................................................ passim

*Arenson v. Whitehall Convalescent & Nursing Home,*
164 F.R.D. 659 (N.D. Ill. 1996) ......................................................................... 18

*Armstrong v. Board of School Directors,*
616 F.2d 305 (7th Cir. 1980) ........................................................................... 6, 8

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) ........................................................................................... 20

*Buycks-Roberson v. Citibank Federal Savings Bank,*
162 F.R.D. 322 (N.D. Ill. 1995) ........................................................................ 16

*Chandler v. Southwest Jeep-Eagle,*
162 F.R.D. 302 (N.D. Ill. 1995) ........................................................................ 19

*In re Corrugated Container Antitrust Litigation,*
643 F.2d 195 (5th Cir. 1981) ............................................................................. 10

*Curtiss-Wright Corp. v. Helfand,*
687 F.2d 171 (7th Cir. 1982) ............................................................................... 9

*De La Fuente v. Stokely-Van Camp, Inc.,*
713 F.2d 225 (7th Cir. 1983) ............................................................................. 16

*Deposit Guaranty National Bank v. Roper,*
445 U.S. 326 (1980) ........................................................................................... 22

*Feldman v. Motorola, Inc.,*
No. 90 C 5887, 1993 U.S. Dist. LEXIS 14631 (N.D. Ill. Oct. 14, 1993) ......... 15

*Frietsch v. Refco Inc.,*
No. 92 C 6844, 1994 U.S. Dist. LEXIS 312 (N.D. Ill. Jan. 12, 1994) .............. 17

*Franklin v. City of Chicago,*
102 F.R.D. 944 (N.D. Ill. 1984) ........................................................................ 15

*Fry v. UAL Corp.,*
136 F.R.D. 626 (N.D. Ill. 1991) ........................................................................ 19

*Garner v. Healy,*
    184 F.R.D. 598 (N.D. Ill. 1999) ................................................................14

*Gilbert v. First Alert,*
    904 F. Supp. 714 (N.D. Ill. 1995) ............................................................16

*Goldsmith v. Technology Solutions Co.,*
    No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) ............7

*Gomez v. Ill. State Board of Education,*
    117 F.R.D. 394 (N.D. Ill. 1987) ..............................................................14

*Grunin v. Int'l House of Pancakes,*
    513 F.2d 114 (8th Cir. 1975) ..................................................................23

*Harman v. Lyphomed, Inc.,*
    122 F.R.D. 522 (N.D. Ill. 1988) ..............................................................19

*Hispanics United v. Village of Addison,*
    988 F. Supp. 1130 (N.D. Ill. 1997) ......................................................7, 13

*Hochschuler v. G. D. Searle & Co.,*
    82 F.R.D. 339 (N.D. Ill. 1978) ................................................................18

*Imasuen v. Mayer,*
    No. 91 C 5425, 1992 U.S. Dist. LEXIS 1449 (N.D. Ill. Feb. 7, 1992) ............17

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) ..............................................................6, 12

*Johns v. DeLeonardis,*
    145 F.R.D. 480 (N.D. Ill. 1992) ..............................................................16

*Kaplan v. Pomerantz,*
    131 F.R.D. 118 (N.D. Ill. 1990) ..............................................................18

*Keele v. Wexler,*
    149 F.3d 589 (7th Cir. 1998) ..............................................................15, 16

*Ledford v. City of Highland Park,*
    No. 00 C 4212, 2000 U.S. Dist. LEXIS 11101 (N.D. Ill. July 27, 2000)............8

*Lockwood Motors v. General Motors Corp.,*
    162 F.R.D. 569 (D. Minn. 1995)..............................................................21

*Love v. City of Chicago,*
    No. 96 C 396, 1997 U.S. Dist. LEXIS 2975 (N.D. Ill. Mar. 10, 1997) ............17

*Mars Steel Corp. v. Cont'l Ill. National'l Bank & Trust Co.,*
  834 F.2d 677 (7th Cir. 1987), *aff'd*, 880 F.2d 928 (7th Cir. 1989) ...................................10

*Metropolitan Housing Development Corp. v. Village of Arlington Heights,*
  616 F.2d 1006 (7th Cir. 1980) .............................................................................10

*Mullen v. Treasure Chest Casino, L.L.C.,*
  186 F.3d 620 (5th Cir. 1999) cert. denied, 528 U.S. 1159 (2000) .................................21

*Peters v. AT&T Corp.,*
  179 F.R.D. 564 (N.D. Ill. 1998) ...........................................................................24

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) ..........................................................................................22

*In re Potash Antitrust Litigation,*
  159 F.R.D. 682 (D. Minn. 1995) ...........................................................................19

*In re Prudential Insurance Co. of America Sales Pracs. Litig.,*
  962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3rd Cir. 1998) ...............................24

*In re Prudential Security Inc. Ltd. P'ship Litigation,*
  163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................................11

*Rahim v. Sheahan,* No. 99C 0395,
  2001 U.S. LEXIS 17214 (N.D. Ill. Oct. 19, 2001)......................................................14

*Retired Chicago Police Association,*
  7 F.3d 584 (7th Cir. 1993) ..................................................................................16

*Riordan v. Smith Barney,*
  113 F.R.D. 60 (N.D. Ill. 1986) ........................................................................17, 21

*Rosario v. Livaditis,*
  963 F.2d 1013 (7th Cir. 1992) .....................................................................14, 15, 16

*Sanner v. Board of Trade,*
  62 F.3d 918 (7th Cir. 1995) ................................................................................20

*Scholes v. Moore,*
  150 F.R.D. 133 (N.D. Ill. 1993)............................................................................16

*Scholes v. Stone, McGuire & Benjamin,*
  839 F. Supp. 114 (N.D. Ill. 1993) .........................................................................14

*Scholes v. Stone, McGuire & Benjamin,*
  143 F.R.D.181 (N.D. Ill. 1992)............................................................................15

*Secretary of Labor v. Fitzsimmons,*
    805 F.2d 682 (7th Cir. 1986) ...................................................................17

*Shaw v. Toshiba America Information Sys.,*
    91 F. Supp. 2d 942 (E.D. Tex. 2000)........................................................21

*Sledge v. Sands,*
    182 F.R.D. 255 (N.D. Ill. 1998).........................................................17, 24

*In re Starlink Corn Products Liability Litig.,*
    212 F. Supp. 2d 828 (N.D. Ill. 2002) ........................................................13

*Sterling v. Velsicol Chemical Corp.,*
    855 F.2d 1188 (6th Cir. 1988) ...................................................................21

*Torrisi v. Tucson Electrical Co.,*
    8 F.3d 1370 (9th Cir. 1993) .........................................................................9

*In re VMS Sec. Litigation,*
    No. 89 C 9448, 1992 U.S. Dist. LEXIS 12141 (N.D. Ill. Aug. 11, 1992) ........................24

*In re VMS Sec. Litigation,*
    136 F.R.D. 466 (N.D. Ill. 1991) ...........................................................14, 15

*In re Visa Check/Mastermoney Antitrust Litigation,*
    280 F.3d 124 (2d Cir. 2001), cert. denied, __ U.S. __, 122 S. Ct. 2382 (2002) ...............21

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982)..........................................................................12

## MISCELLANEOUS

Manual for Complex Litigation (Third).........................................................7, 8, 11, 24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| IN RE STARLINK CORN PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1403 |
|  | Judge James B. Moran |
| This Document Relates To: ALL NON-STARLINK FARMER ACTIONS |  |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

### PRELIMINARY STATEMENT

The Non-StarLink Farmer Plaintiffs (herein "Plaintiffs") respectfully submit this memorandum in support of their motion for entry an order preliminarily approving a proposed settlement of this action against StarLink Logistics, Inc., formerly known as Aventis CropScience USA Holding, Inc. (collectively "SLLI") and Advanta USA, Inc., formerly known as Garst Seed Company (collectively "Advanta") (SLLI and Advanta are collectively referred to as "Defendants"). The proposed settlement (the "Settlement") provides for payment of cash by Defendants of $110,000,000.00, plus interest accruing at 4% per annum until the actual payment of the Settlement Consideration (collectively, the "Settlement Amount"), which, as of January 31, 2003, equals approximately $1,470,000.00 in excess of the $110,000,000 Settlement Amount. Plaintiffs believe that the terms of the proposed Settlement readily meet -- and, indeed, greatly exceed -- the threshold showing required for preliminary approval. Accordingly, Plaintiffs submit that the Preliminary Approval of the proposed Settlement should be granted; the proposed Settlement Class should be certified under Rule 23; and that the proposed notice plan, which is the best notice practicable, should be approved.

## History of the Litigation

The history of this Action is well known to the Court and will not be repeated at length herein. In sum, between December 2000 and February 2001, corn farmers (the "Non-StarLink Corn Farmers") in the corn belt states of Iowa, Illinois, Indiana, Kansas, Minnesota, Missouri, Nebraska, North Dakota, South Dakota and Wisconsin filed class actions against SLLI and/or Advanta for damages caused by StarLink corn.[1] All cases pending in federal court were transferred to this Court pursuant to an order from the JPML on June 20, 2001 that established MDL Docket No. 1403, *In re StarLink Corn Products Liability Litigation.*

In July 2001, this Court appointed four firms as co-lead counsel to coordinate the litigation of the farmer cases: Cohen Milstein Hausfeld & Toll PLLC; Milberg Weiss Bershad Hynes & Lerach LLP; Seeger Weiss LLP; and Wolf Haldenstein Adler Freeman & Herz LLP ("Class Counsel"). At the Court's direction, Plaintiffs filed a consolidated class action complaint on August 18, 2001, asserting the following claims against SLLI: violation of the North Carolina Deceptive Trade Practices Act (on behalf of a nationwide class); and negligence; negligence *per se*; public nuisance; private nuisance; strict liability, and; conversion (all on behalf of statewide classes). Plaintiffs also asserted claims for negligence, negligence *per se*, public nuisance, private nuisance, strict liability and conversion under the common law of Iowa against Advanta (on behalf of a nationwide class). This complaint was amended on October 11, 2001, adding an

---

[1] A significant majority of these cases were filed in state courts; SLLI removed all of the state actions to federal court and then quickly petitioned the Judicial Panel on Multidistrict Litigation (the "JPML") to transfer all cases in the federal courts to this Court in February 2001. Plaintiffs resisted removal and sought remand the removed cases. Except in two instances, remand was denied. Two of the cases removed to federal court were remanded: *Mulholland v. Aventis CropScience USA Holding, Inc.* (remanded to the Circuit Court for Randolph County, Illinois) and *Rose v. Aventis CropScience USA Holding, Inc.* (remanded to the Superior Court of Marion County, Indiana). The plaintiffs in those case are also parties to the proposed Settlement.

additional Plaintiff from Tennessee and a claim against SLLI under the Tennessee Consumer Protection Act (on behalf of a Tennessee statewide class).[2]

Defendants filed motions to dismiss the Complaint, in its entirety, in October 2001. Plaintiffs opposed this motion. In its July 11, 2002 ruling, this Court dismissed Plaintiffs' claims arising under the North Carolina Deceptive Trade Practices Act and the common law of conversion, and denied the motion with respect to the other claims.

Plaintiffs filed a motion for class certification on December 7, 2001. SLLI served discovery requests, purportedly limited to class certification issues, upon Plaintiffs during the last week of December 2001. Plaintiffs responded to these interrogatories and requests for production of documents in February and March 2002. In March and April 2002, Defendants deposed ten of the class representatives – one from each corn state represented in the Complaint. In May 2002, SLLI, with Advanta's participation, deposed Plaintiffs' expert agricultural economics expert on class certification issues.

Plaintiffs served discovery requests upon Defendants in March 2001. After Plaintiffs' attempts to obtain their discovery without the Court's intervention failed, Plaintiffs filed a motion to compel discovery on May 28, 2002. Under the Court's direction, Defendants began producing documents responsive to Plaintiffs' request for production of documents in June 2002. During the summer of 2002, Plaintiffs' counsel reviewed tens of thousands of documents produced by Defendants and deposed two of Defendants' expert witness on class certification issues including the alleged common impact and damages associated with Defendants' conduct, and Defendants deposed Plaintiffs' agricultural economics expert.

---

[2] All references to the "Complaint" herein refer to the Farmer Plaintiffs' Master Second Amended Consolidated Complaint.

### Negotiation of the Settlement

Throughout the pendency of the Non-StarLink Farmer Actions, the parties engaged, from time to time, in settlement discussions. Those discussions ultimately culminated, over a period of many months and only after much hard fought, arm's-length negotiations, in the Settlement described herein. The Settlement was not reached, however, until: (a) Plaintiffs and their counsel were satisfied that the amount offered in settlement was fair, reasonable, and adequate to compensate members of the Settlement Class with respect to the claims asserted against Defendants, (b) the Settlement consideration represented a reasonable portion of the amount approaching that which could potentially be recovered by Plaintiffs, if fully successful on the merits, at trial; (c) careful consideration of the strengths and weaknesses of the claims of the Plaintiffs and all other non-StarLink corn farmers based on Plaintiffs' counsel's extensive analysis of the applicable law, the claims asserted, the District Court's decision on Defendants' motion to dismiss, and the risks to Plaintiffs' success on the ultimate merits of the claims asserted associated with those strengths and weaknesses, (d) consideration of the risks associated with obtaining certification of a nationwide litigation class under prevailing law, and (e) consideration of the risks generally associated with large-scale complex class action litigation. It was only after the careful analysis of all of those issues that Plaintiffs entered into the Settlement described herein for the benefit of all non-StarLink corn farmers.

On January 29, 2003, after further extensive and complex negotiations between Defendants and Plaintiffs in the Non-StarLink Farmer Actions, a Stipulation of Settlement for the Settlement of the Non-StarLink Farmer Actions was reached.

### The Proposed Settlement Consideration

Under the proposed Settlement, SLLI will pay $90,000,000 and Advanta will pay $20,000,000, plus 4% interest on those amounts accruing since September 24, 2002. The Gross

Settlement Fund will include the Defendants' payments and any interest or dividends that accrues thereafter.

In addition, the Parties are continuing to investigate potential structures, methods and procedures by which to enhance the value of the Settlement to Settlement Class members, utilizing a prepaid MasterCard™ and/or Visa™ card, which will be redeemable for cash. In addition, the prepaid cards will be usable at a chain of retail stores in the farm belt and by mail order that will offer discounts to Settlement Class members on the retail, sale, and bulk purchase prices on a wide variety of agricultural and farm goods and supplies.

If successful, the envisioned enhancement could increase the value of the Settlement significantly. If, however, no agreement on this enhancement plan is reached, SLLI and Advanta remain liable to pay the full amount of $110,000,00.00, plus accrued interest.

### The Settlement Class

The Settlement Class is defined as follows:

All persons and entities who operated farms in the United States from which corn grown for grain that was not grown from StarLink™ corn seed ("Non-StarLink Corn") was harvested since 1998 ("Non-StarLink Farmers"), including each of his, her, its, and their representatives, assigns and any other persons or entities with a contractual, sharing, ownership, or other legal interest in a Non-StarLink Farmer's corn harvest (the "Settlement Class").

Excluded from the Settlement Class are to be SLLI, Advanta, and any of their respective past, present, or future parents, subsidiaries, predecessors, successors, partners, assigns, insurers, and affiliates, and each of their respective past, present, or future partners, officers, directors, or assigns, and the members of the immediate families, heirs, estates, executors, and legal representatives of any of the past, present, or future partners, officers, directors, or assigns of SLLI and/or Advanta, and their respective past, present, or future parents, subsidiaries, predecessors, successors, partners, assigns, insurers and affiliates; any governmental entity; and all plaintiffs in lawsuits arising out or relating to StarLink corn or Cry9C that were not brought as purported class actions that were pending as of January 29, 2003.

Members of the Settlement Class will be compensated for both damage to their property ("Property Damage"), to the extent such Settlement Class members can demonstrate actual

Property Damage as well as consequential damage arising from StarLink contamination; and diminution in market prices for corn ("Corn Loss"). Additionally, Plaintiffs' counsel will seek special awards, up to $5,000, for the Settlement Class representatives, who diligently participated in several facets of this litigation, including intensive discovery. Finally, Plaintiffs' counsel seek payment of attorneys' fees and reimbursement of litigation expenses.

## ARGUMENT

### I.   THE PROPOSED IMPLEMENTATION ORDER SHOULD BE APPROVED

In determining whether preliminary approval is warranted, three issues must be decided. The first issue is whether the proposed Settlement is within the range of what might ultimately be found fair, reasonable and adequate, under the standards set forth by the Seventh Circuit in *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980), and thus warrants the publication of notice and scheduling of a hearing to consider final settlement approval. The second issue is whether the Settlement Class conforms to the requirements of Rule 23, as stated by the Supreme Court in *Amchem Products v. Windsor*, 521 U.S. 591 (1997). The third issue is whether the proposed notice plan will provide the best notice practicable, as required under Rule 23 and the due process clause of the Constitution. As explained below, the terms of the proposed Settlement are fair, reasonable, and adequate, the Settlement Class meets all requirements under Rule 23 and *Amchem*, and the proposed notice plan exceeds the requirements of Rule 23 and due process.

### II.   THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

It is well established that there is an overriding public interest in settling and quieting litigation, and this interest is particularly vital in class actions. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("[f]ederal courts naturally favor the settlement of class action

6

litigation"). In *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995), Judge Guzman of this Court recognized that

> the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement.

*Goldsmith*, 1995 U.S. Dist. LEXIS 15093 at *6 (citations, quotation marks omitted); *see also Hispanics United v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) (stating "[c]ompromise is particularly appropriate in complex class actions").

Rule 23(e) provides that: "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Courts generally apply a two-step approach to the settlement approval process. In the first step, preliminary approval, the court reviews the proposed settlement for obvious deficiencies, schedules a fairness hearing and provides the class with notice of the proposed settlement and the hearing; in the second step, the court considers final approval of the proposed settlement at a formal fairness hearing where arguments and evidence may be presented in support of and in opposition to the settlement. *See Manual for Complex Litigation (Third)* (*"MCL 3d"*) § 30.41 (rev. ed. 2002).

At a later fairness hearing that will be set by the Implementation Order, the Court will be asked to consider whether the proposed Settlement is fair, reasonable, and adequate under the factors well-established in this Circuit.[3] On a motion for preliminary approval, however, the

---

[3] The Seventh Circuit has set forth an eight-factor test to determine the fairness of a class action settlement:

> (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent

Court's function is merely "to ascertain whether there is any reason to notify the class members

of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314

(citation omitted).    Where a proposed settlement appears to fall within the range of

reasonableness, it is appropriate to issue preliminary approval and direct notice to members of

the settlement class.  As explained in the Manual for Complex Litigation,

> If the preliminary evaluation of the proposed settlement does not disclose grounds
> to doubt its fairness or other obvious deficiencies, such as unduly preferential
> treatment of class representatives or of segments of the class, or excessive
> compensation for attorneys, and appears to fall within the range of possible
> approval, the court should direct that notice under Rule 23(e) be given to the class
> members of a formal fairness hearing, at which arguments and evidence may be
> presented in support of and in opposition to the settlement.

*MCL 3d* § 30.41 at 237; *see also Armstrong*, 616 F.2d at 314 (the purpose of pre-notification

hearing is "to determine whether the proposed settlement is within the range of possible

approval") (citation and internal quotation marks omitted); *Ledford v. City of Highland Park*,

No. 00 C 4212, 2000 U.S. Dist. LEXIS 11101, at *5 (N.D. Ill. July 27, 2000) (same).

At this stage, a brief analysis under Seventh Circuit standards demonstrates that the

Settlement is worthy of preliminary approval and notification to the Settlement Class.

### A.    The Settlement Provides Substantial Benefits That Fall Squarely within the Range of Recoverable Damages Estimated by Plaintiffs

The Settlement addresses two types of claims: property damage to individual farm

operators and diminution of market prices for corn as a result of alleged StarLink contamination

to the United States corn handling system.  Members of the Settlement Class may recover for

both types of loss.   Property Damage claimants ("Property Damage Claimants") will be

compensated for the costs associated with actual contamination (by cross-pollination or

---

counsel; and (8) the stage of the proceedings and the amount of discovery
completed.

*See Armstrong*, 616 F.2d at 314 (citation omitted).

8

commingling) of their crops, corn stores, equipment, and property. Compensation for lost market value, transportation and storage costs resulting from actual contamination will equal each Property Damage Claimant's verified loss. Total claims under this category are capped at $10,000,000 (less each claimant's *pro rata* share of litigation expenses), an amount that Plaintiffs' counsel estimate will be adequate to cover all such claims.

The balance of approximately $100 million (including any amount not exhausted by payments to Property Damage claimants) will be paid to settle the claims of Non-StarLink Corn Farmers for market losses suffered by them due to general StarLink contamination of the U.S. corn supply ("Corn Loss Claimants"). Depending on the ultimate claims responses rate, Corn Loss Claimants are estimated to receive between 75 cents and $1.25 for each acre of corn harvested during 2000. The Settlement provides an alternative method of payment for farmers who did not harvest corn in 2000, based on a discounted average of corn harvested between 1998 and 2002.

It is Class Counsel's view that the overwhelming majority of Settlement Class members have not suffered or will be unable to demonstrate individual property damage, and therefore that the proposed allocation of the Net Settlement Fund provides a larger potential recovery to each Settlement Class member based upon each such Class member's ability to prove his, her, or its actual property damage. Variations in allocations between and among class members within a single class have been approved based on the varying strengths and weaknesses of their respective claims is well accepted by the courts. *See, e.g., Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174-75 (7th Cir. 1982) (allocation of fund was governed by traditional equity rules and could be resolved by weighing relative deservedness of class members based on the facts of the case); *see also Torrisi v. Tucson Elec. Co.*, 8 F.3d 1370, 1377-78 (9th Cir. 1993) (approving settlement that allocated certain claims four times the weight of other claims); *In re Corrugated*

9

*Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981) ("[i]t is self-evident that if the settlement's adequacy rests on the value of one set of claims, distribution of the settlement should be weighed heavily in favor of plaintiffs whose claims comprise that set").

This level of compensation is also consistent with Plaintiffs' counsel's best estimate of damages for losses resulting from StarLink contamination. Under Plaintiffs' theory, Non-StarLink Farmers received diminished market prices for their corn, particularly in the market year beginning September 2000,[4] due to a reduced demand for U.S. corn, primarily from two key export countries, Japan and South Korea. That decreased demand was most pronounced during the winter of 2000-01. Various estimates of the diminution in price during this market year range from 0 to 3 cents per bushel. Thus, estimated damages range from $0 to $300 million. The Settlement of $110 million falls well within this range and is, accordingly, a fair, reasonable, and adequate recovery given the costs and risks of further litigation.

### B.   Continued Litigation Would Be Expensive, Prolonged and Risky

In evaluating the strengths and weaknesses of Plaintiffs' case, the Court must take care not to conduct something akin to a trial on the merits. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987), *aff'd*, 880 F.2d 928 (7th Cir. 1989) (*en banc*); *Metro Hous. Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980). Nevertheless, it is appropriate for the Court to consider the merits of the proposed settlement terms against the costs and benefits of continued litigation.

There is no doubt that the expense of continuing the litigation would be substantial. As the Court has already seen, Defendants mounted a broad-based challenge to the Complaint. A similar opposition to Plaintiffs' class certification motion would certainly follow. Significant

---

[4]   A market year for corn begins in September and ends in August. Market Year 2000 began in September 2000 and ended in August 2001.

merits (including expert) discovery remains. Trial of liability issues alone in this case would involve significant attorney and expert time, the introduction of voluminous documentary and deposition evidence, and the considerable expenditure of judicial resources. In addition, the "normal" costs of trial, including copying, travel, computer support services, and other basic expenses, are quite high. In complex class action litigation such as this, those expenses would impose a significant burden on any recovery obtained for the Settlement Class if Plaintiffs were ultimately successful, which is by no means assured.

Furthermore, given the highly contested nature of virtually every aspect of this case, even if the Settlement Class were to recover a judgment larger than the proposed settlement offer, which is certainly not guaranteed, the additional delay, through trial, post-trial motions, and the appellate process, could deny the Settlement Class any recovery for years. Avoiding that unnecessary and unwarranted expenditure of resources and time would benefit all parties and the Court. *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (citation omitted). In short, the Settlement secures for the Settlement Class an immediate cash recovery, undiminished by further expenses, and without the delays, risks, and uncertainties of continued hard-fought litigation.

### C. The Settlement Is the Product of Arms' Length Negotiations

A proposed class action settlement is considered presumptively fair where, as here, there is no evidence of collusion and the parties, through capable counsel informed by meaningful discovery, have engaged in arms' length negotiations. *See, e.g., Scholes v. Stone, McGuire & Benjamin*, 839 F. Supp. 1314, 1317-18 (N.D. Ill. 1993) (noting arms' length negotiation and no evidence of collusion between the parties); *see also MCL 3d*, § 30.42.

Here, Plaintiffs have litigated this action vigorously to benefit the Settlement Class, and their efforts in advancing the proceedings were not affected by the on-going, off-and-on

settlement negotiations. As discussed above, those negotiations were difficult, complex, and protracted. Even a cursory review of the Stipulation itself reveals that the negotiations leading to settlement were lengthy, complex and contentious, involving numerous sessions between Plaintiffs' and Defendants' counsel over the course of many months. Thus, the Settlement, which resulted from extensive arms' length negotiations between highly experienced adversaries, is presumptively fair. *Scholes*, 839 F. Supp. at 1318 (settlement is fair when "[n]o evidence has been adduced suggesting that the Settlement Agreement is the product of collusion, or that it was not entered in good faith").

### D. Plaintiffs' Counsel Recommend the Proposed Settlement Because It Is in the Best Interests of the Settlement Class

The Court is "entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable, and adequate." *Isby*, 75 F.3d at 1200. In the absence of fraud, collusion or the like, the Court should be hesitant to substitute its own judgment for that of counsel. *See, e.g., Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

Here, Plaintiffs' counsel recognize that, given the significant risks involved in this litigation, the Settlement is in the best interests of the Settlement Class. Plaintiffs' counsel have been vigorously litigating this case since December 2000, when the first farmer suits against SLLI were filed. During that time, Plaintiffs' counsel have carefully and comprehensively analyzed the legal issues and concepts applicable to Plaintiffs' causes of action; reviewed evidence from SLLI and Advanta (approximately tens of thousands of documents, covering merits as well as class certification issues), the United States Environmental Protection Agency, and other sources; and worked extensively with their experts and the Plaintiffs to develop a range of estimated damages. Counsel have a thorough understanding of the strengths and weaknesses of this action's legal foundations, and have vigorously opposed Defendants' motion to dismiss. While the Court preserved the majority of Plaintiffs' common law claims, it limited some of

these claims (negligence, negligence *per se*, and strict liability) under the economic loss doctrine. *In re Starlink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828, 838-44, 848-51 (N.D. Ill. 2002).

At this stage in the litigation, then, Plaintiffs' counsel are in a position to accurately assess the strengths and weaknesses of Plaintiffs' claims and the overall fairness of the proposed settlement. *See Hispanics United*, 988 F. Supp. at 1170 (holding "[i]n determining the fairness of a class settlement, the Court is entitled to rely heavily on the opinion of competent counsel") (citation and internal quotation marks omitted). Here, the Settlement satisfies the threshold requirement for scheduling a fairness hearing and providing the Settlement Class with notice.

## III. CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS UNDER RULE 23 IS APPROPRIATE

The Parties also seek certification of a Settlement Class. The Settlement Class (1) meets all the requirements for certification of a settlement class; and (2) reflects the same class Plaintiffs would have sought certified as a litigation class. As demonstrated in Plaintiffs' previously filed motion for class certification and, as briefly analyzed below, all of the prerequisites of Rule 23 are easily met here. Indeed, the only dispute that would likely arise between the parties on the class certification motion was whether the manageability aspect of the predominance requirement of Rule 23(b)(3) would be met. As explained in *Amchem*, a district court "[c]onfronted with a request for settlement-only class certification . . . need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620. Thus, any potential challenges to the manageability of this Action on behalf of a single nationwide class that may have been asserted here are irrelevant to certification of the Settlement Class requested here.

**A.**      <u>**All Prerequisites for Class Certification Under Rule 23(a) Are Met**</u>

     **1.**      **The Settlement Class Is Sufficiently Numerous to**
                 <u>**Render Joinder of All Members Impracticable**</u>

Where a court determines that joinder of the individuals represented in a class action would be impracticable, though not necessarily impossible, this requirement is satisfied. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 398 (N.D. Ill. 1987); *Rahim v. Sheahan, No. 99C 0395,* 2001 U.S. LEXIS 17214, at \*\*37-38 (N.D. Ill. Oct. 19, 2001).

Here, Plaintiffs estimate, and Defendants agree, that the number of persons falling within the proposed Settlement Class definition is approximately 400,000.[5] These persons, furthermore, are located throughout the United States. By virtue of size and geographical dispersal, the proposed Settlement Class satisfies the numerosity requirement.

     **2.**      <u>**Common Questions of Law And Fact Exist**</u>

The commonality requirement of Rule 23(a) is considered a "low hurdle easily surmounted." *Scholes*, 143 F.R.D. at 185 (internal quotation marks omitted). As the Seventh Circuit has held, "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Indeed, numerous courts have held that Rule 23(a) only requires "[t]he party seeking class certification [to] demonstrate that there is *at least one* question of law *or* fact common to the class." *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991) (emphasis added); *Rosario*, 963 F.2d at 1018. The commonality element of Rule 23 does not require complete identity of claims among class members but, rather, that at least one issue whose resolution will affect all or a significant number of class members exists. *Garner v. Healy*, 184 F.R.D. 598, 601

---

[5] *See* the United States Department of Agriculture's 1997 Census of Agriculture at www.nass.usda.gov/census/census97/highlights/usasum/us.txt.

(N.D. Ill. 1999). Thus, "factual variations among class members' grievances do not defeat a class action." *Keele*, 149 F.3d at 594 (citation omitted); *see also Rosario*, 963 F.2d at 1017.

Defendants' alleged conduct presents numerous questions of law and fact that are not only common, but are identical to every member of the proposed Settlement Class.[6] Moreover, Plaintiffs allege that Defendants engaged in a common course of conduct that adversely impacted the market price of corn and similarly injured all Settlement Class members. Complaint, ¶¶ 7-12, 45, 49-50, 59-62, 84-93. As this Court has readily recognized, "[w]here a question of law refers to a standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984). Specifically, this Court has found the commonality element of Rule 23(a) in cases alleging a common course of wrongful conduct where such conduct has a generalized market impact – the very type of conduct alleged here. *See, e.g., In re VMS*, 136 F.R.D. at 474; *Feldman v. Motorola, Inc.*, No. 90 C 5887, 1993 U.S. Dist. LEXIS 14631, **20-23 (N.D. Ill. Oct. 14, 1993).

### 3.    The Plaintiffs' Claims Are Typical of the Settlement Class Claims

Because "[t]he question of typicality in Rule 23(a)(3) is closely related to the preceding

---

[6]   The common questions of law and fact presented in the Complaint, remaining in light of this Court's July 11, 2002 decision, include, at a minimum: (1) whether SLLI and Advanta are responsible for StarLink contamination of non-StarLink corn; (2) whether SLLI and Advanta licensed, marketed, sold, or distributed StarLink in such a manner that cross-pollination or commingling with non-StarLink corn was reasonably foreseeable; (3) whether SLLI was negligent in supervising licensees who sold or distributed StarLink corn seed; (4) whether SLLI and Advanta were negligent in the licensing, sale, or distribution of StarLink; (5) whether SLLI and Advanta were negligent in their supervision of farmers who harvested or sold StarLink corn; (6) whether Defendants' conduct in contaminating the U.S. corn supply and the entire corn farming and production chain constitutes a public nuisance; (6) whether Defendants' conduct in contaminating Plaintiffs' or Class Members' farmland and equipment constitutes private nuisance; (7) whether SLLI and Advanta are strictly liable for damages caused by the licensing, sale, or distribution of StarLink; (8) whether SLLI and Advanta are liable to Plaintiffs and Class Members for damages and the proper measure (per unit) of such damages. Complaint, ¶¶ 116, 156, 197, 237, 279, 320, 361, 401, 440, 489, 529.

question of commonality," *Rosario*, 963 F.2d at 1018, the factors that support a finding of commonality also support a finding of typicality. *See Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 333 n.13 (N.D. Ill. 1995) (typicality is closely related to commonality, as a finding of one generally "compels a finding" of the other). As the Seventh Circuit has explained, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); *see also Keele*, 149 F.3d at 595; *In re VMS*, 136 F.R.D. at 475.

"Typicality" does not, however, mean that the claims of the class representative must be identical to those of the absent class members. *Scholes v. Moore*, 150 F.R.D. 133, 137 (N.D. Ill. 1993); *Gilbert v. First Alert*, 904 F. Supp. 714, 719 (N.D. Ill. 1995) (quoting *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993)). Therefore, courts look to the elements of the causes of action that the class representative must prove in order to establish the defendant's liability. If the elements of a representative's claim are substantially the same as those needed to be proved by the class members, the representative's claim is typical. *Johns v. DeLeonardis*, 145 F.R.D. 480, 483 (N.D. Ill. 1992).

In this case, all Settlement Class members' claims arise from the exact same conduct by Defendants and all Plaintiffs assert the same legal claims against Defendants. Defendants, through their contamination of the United States corn supply with StarLink, adversely affected the market price for corn and, thereby, similarly damaged every non-StarLink corn farmer. Thus, Plaintiffs' claims are typical of those available to the Settlement Class.

### 4. The Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a) is satisfied if the class representative has no "antagonistic or conflicting claims with other members of the class," the representative has "sufficient interest in the outcome to

ensure vigorous advocacy," and plaintiffs' counsel is "competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Sledge*, 182 F.R.D. at 259 (citations omitted)*; see also Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986). Plaintiffs meet all three prongs of the adequacy test.

First, it is well established that in order to defeat class certification, a conflict between a representative and a proposed class must relate directly to the subject matter of the litigation. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Love v. City of Chicago*, No. 96 C 396, 1997 U.S. Dist. LEXIS 2975, at *11 (N.D. Ill. Mar. 10, 1997). Therefore, speculative, theoretical, or peripheral antagonisms are not sufficient to bar class certification. *See, e.g., Frietsch v. Refco Inc.*, No. 92 C 6844, 1994 U.S. Dist. LEXIS 312, at *23 (N.D. Ill. Jan. 12, 1994); *Imasuen v. Mayer*, No. 91 C 5425, 1992 U.S. Dist. LEXIS 1449, at *3-4 (N.D. Ill. Feb. 7, 1992). Plaintiffs are not aware of any interests that are antagonistic to those of the Settlement Class. Discovery of the Settlement Class representatives – directly bearing on their suitability to act as class representatives – is complete and no conflicts have emerged.

Second, Plaintiffs have a sufficient – and demonstrated – interest in the outcome of this litigation. As alleged in the Complaint, Defendants' conduct has affected Plaintiffs' livelihood: In contaminating the U.S. corn supply, Defendants depressed the market price of corn, a commodity upon which Plaintiffs and Settlement Class members rely for their livelihoods. Complaint, ¶¶ 84-93. Furthermore, Plaintiffs have shown alacrity and diligence in prosecuting the claims presented here by participating actively in this litigation. Each of the Plaintiffs has provided to Defendants' extensive property, farming, and financial records in response to Defendants' request for production of documents, and responded to detailed interrogatories covering the same areas of inquiry. Ten of the Plaintiffs traveled to metropolitan centers for depositions taken by Defendants.

Third, Plaintiffs have retained counsel highly experienced in complex class litigation, specifically in the areas of product liability and environmental torts, to prosecute their claims and those of the Settlement Class.[7] Class Counsel, for instance, have, collectively, held lead roles in hundreds of complex and national class action cases from the very inception of the modern class action rule.

**B.      The Proposed Class Is Maintainable Under Rule 23(b)**

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem Prods.*, 521 U.S. at 615.

**1.      Common Questions of Fact and Law Predominate**
**Over the Individual Questions Presented in This Action**

The focus of Rule 23(b)(3)'s predominance test is on whether the class claims arise out of the same legal or remedial theory – "a common legal grievance." *Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339, 349 (N.D. Ill. 1978). Rule 23(b)(3) does not require that all questions of law or fact be common; it requires only that the common questions predominate over individual questions. *Arenson v. Whitehall Convalescent & Nursing Home*, 164 F.R.D. 659, 662 (N.D. Ill. 1996). Thus, "[t]he predominance requirement is generally satisfied where a 'common nucleus of operative fact' exists among all class members for which the law provides a remedy." *Chandler v. Southwest Jeep-Eagle,* 162 F.R.D. 302, 310 (N.D. Ill. 1995). Moreover, "[c]ommon questions need only predominate; they need not be dispositive of the litigation . . . [w]hen one or

---

[7] Courts also primarily focus on the plaintiffs' counsel's ability to prosecute the action in determining adequacy of representation. *See Amchem Products*, 521 U.S. at 626 ("[t]he adequacy heading also factors in competency and conflicts of counsel") (citation omitted); *cf. Retired Chicago Police Ass'n*, 7 F.3d at 596 (summarizing the dimensions of adequate representation); *Kaplan v. Pomerantz*, 131 F.R.D. 118, 120 (N.D. Ill. 1990) (discussing propriety of class representative's reliance upon his attorney's knowledge and skill).

more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) (citations omitted); *see also Chandler*, 162 F.R.D. at 310.

As discussed above, the central issue in this litigation is whether SLLI and/or Advanta contaminated the United States corn supply with StarLink and whether that contamination damaged non-StarLink corn farmers by depressing market prices for corn. Because the litigation would necessarily focus on the allegations of Defendants' wrongful conduct, the question of Defendants' liability predominates over any individual issues that might arise among members of the Settlement Class. *See generally Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D. Ill. 1991) (courts generally focus on issues relating to defendants' liability in deciding whether the predominance requirement is met) (citation omitted); *see also Harman*, 122 F.R.D. at 525 (concluding that defendant's conduct predominated over circumstances of individuals' stock purchases). The crux of this case is damage to the United States corn handling and distribution system, and the resultant market damage to corn prices, a claim typically litigated on a class basis. For instance, in open-market securities fraud actions, common questions ordinarily predominate under the presumptions enunciated in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) (adopting the fraud-on-the-market doctrine), because "[t]he idea of a free and open public market is built upon the theory that competing judgments of buyers and sellers as to the fair price of a security bring[] about a situation where the market price reflects as nearly as possible a just price." *Id.*, 485 U.S. at 246 (citations omitted). Under such circumstances, "the market is performing a substantial part of the valuation process." *Id.* at 244. Corn is a commodity grown and sold as a fungible product throughout the United States. The United States dominates the world trade in corn, with a global market share exceeding seventy percent. *See* Declaration of

Colin Carter dated Dec. 5, 2001, submitted with Plaintiffs' Motion for Class Certification ("Carter Decl."), ¶ 4. Prices for corn are determined at the Chicago Board of Trade ("CBT") futures and options markets, and these CBT prices serve as a benchmark for corn pricing throughout the United States and the world. Carter Decl., ¶ 5; *see also Sanner v. Board of Trade*, 62 F.3d 918, 928-29 (7th Cir. 1995) (concluding that futures market – determined at CBT – and cash market for soybeans tend to move in lock-step). Here, as in any case asserting damages to a commodity traded in an efficient market, all members of the Settlement Class received a price for their corn set by the market, and that market price was depressed in direct response to revelations about StarLink contamination, regardless of the individual transactions of any of the Plaintiffs or members of the Settlement Class.[8] Thus, analogous to the situation in which the price of a security is affected by positive or negative information and damages can be established on a classwide basis, the market price of corn is similarly affected, and translates into losses suffered by corn farmers who, as Professor Carter characterizes them, are "price takers." Carter Decl., ¶ 28.

While questions affecting the extent of Settlement Class members' individual damages exist, these individual questions are eclipsed by the predominance of common questions. *Arenson*, 164 F.R.D. at 664-66; *Riordan*, 113 F.R.D. at 65.[9] Moreover, as the Supreme Court

---

[8] Plaintiffs' theory of damages is, in essence, that Defendants licensed, marketed or otherwise distributed StarLink corn seed in a manner that caused widespread contamination of the U.S. corn supplies, and that when news of the contamination and remedial steps to address the contamination became widespread in the fall of 2000, corn prices suffered an immediate, significant depression. The impact of publicly-available information on market prices for corn, both on the CBT and at local elevators, is outlined in the Carter Declaration. Professor Carter ultimately concludes that classwide damages can be determined, stating, "the amount of diminution in value of the overall price of corn due to StarLink contamination related issues can be reliably estimated for the market at large by utilizing accepted economic methodologies which will show the price impact on a per bushel of corn sold basis on individual non-StarLink farmers." Carter Decl., ¶ 29.

[9] *See also In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001), *cert. denied*, __ U.S. __, 122 S. Ct. 2382 (2002) (affirming class certification, finding that common issues of injury-in-fact, causation, viability of affirmative defenses and the general application of a class-wide damages

Advanta. Even individual damages claims in the tens of thousands would not be economically feasible to litigate. The Supreme Court has repeatedly recognized that, in cases such as this, litigation on a class basis provides the only meaningful opportunity for most class members to seek redress. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (vast majority of class members taking on well-financed adversaries "would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device").

Furthermore, the absent members of the proposed Settlement Class have virtually no demonstrated interest in controlling the litigation. Plaintiffs and their counsel are unaware of a single *individual* lawsuit filed by a non-StarLink corn farmer against SLLI in connection with the wrongdoing alleged in this action. As to nature and extent of other litigation concerning the alleged wrongdoing, this case is not duplicative of litigation previously commenced. Indeed, in its order of June 20, 2001, the JPML transferred all non-StarLink corn farmer actions filed in or removed to federal court to this Court, and all cases thereafter filed in or removed to federal court pursuant to its tag-along rules. Thus, beyond this coordinated multidistrict litigation, only the remanded *Mulholland* and *Rose* actions exist. *Mulholland* and *Rose* are part of the proposed Settlement. Furthermore, *Mulholland* and *Rose* have not progressed beyond the initial phases of litigation – based on the Parties' agreement with the Court to coordinate those actions with the cases at bar. For these reasons, class certification here will not interfere with or undermine litigation commenced in other courts.

## IV. THE COURT SHOULD APPROVE THE PROPOSED NOTICE TO CLASS MEMBERS

Under Rule 23(e), notice must be given to members of the Settlement Class "in such a manner as the court directs." The "mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). Plaintiffs' proposed notice plan involves three components.

First, Plaintiffs propose sending a copy of the Notice and a Corn Loss Proof of Claim form,[10] attached to the Implementation Order as Exhibits 1 and 3, by first-class mail, to each Settlement Class member whose address can be reasonably located from sources available to Plaintiffs, including the 500,000 name list of *Progressive Farmer*.[11] Second, Plaintiffs propose publication of the Summary Notice, attached to the Implementation Order as Exhibit 2, in the following agricultural news sources: *Farm Industry News* (circ. 250,000); *Farm Journal* (circ. 550,000); *Farm Progress* (circ. 600,000); www.AGWEB.com; Business Wire newservice. Publication of the Summary Notice will help reach those members of the Settlement Class who, for some reason, may not receive the mailed Notice and Corn Loss Proof of Claim form. Third,

---

[10] All members of the Settlement Class are, by definition, eligible to file a Corn Loss Proof of Claim. Property Damage compensation, however, requires proof of actual contamination and therefore will not be available to every Settlement Class member. To streamline the claims process and minimize confusion for Settlement Class members, the Corn Loss Proof of Claim will be sent with the Notice. If a Settlement Class member believes that he is eligible for property damage compensation as well, instructions accompanying the Corn Loss Proof of Claim explain how to obtain a Property Damage Proof of Claim. The Property Damage Proof of Claim is attached to the Implementation Order as Exhibit 4.

[11] *Progressive Farmer, Inc.* is a part of the Time Inc. publishing group. The company maintains lists of farmers derived from several sources including *Progressive Farmer* publishing group subscriptions and surveys and annual USDA crop subsidy program data. These lists are purchased routinely by groups that market products and services to farmers. The list Plaintiffs' counsel have rented covers corn farmers: approximately 500,000 names of corn farm owner/operators and approximately 90-95 percent of all U.S. corn farm acres. And, because Time Inc. is a licensed National Change of Address vendor, *Progressive Farmer* gets regular change of address information from the U.S. Postal Service.

the Summary Notice, the Notice, and the Corn Loss Proof of Claim form will be continuously posted on Co-Lead Counsel's firm websites (www.cmht.com, www.milberg.com, and www.whafh.com) and at www.starlinkcorn.com.

The Summary Notice and the Notice accurately summarize the Settlement terms and advise Settlement Class members of their benefits, rights and limitations. The Notice condenses the terms of the Settlement set forth in the Stipulation, but covers all relevant topics: the history of the litigation; the certification of the Settlement Class; the substantive terms of the Settlement, including value to members of the Settlement Class, the potential enhancement plan, the allocation plan, conditions of the Settlement, the effect of the Settlement and release of claims, the maximum requests by Plaintiffs' counsel in attorneys' fees and costs, and the request for special awards to the Settlement Class representatives; the right to request exclusion from the Settlement Class, and method for making such a request, and; the right to object to terms of the proposed Settlement, and method for presenting objections. Both notices, furthermore, are written and formatted to communicate this information in a manner that will be understood by members of the Settlement Class who, presumably, are not lawyers. *See, e.g., In re VMS Sec. Litig.*, No. 89 C 9448, 1992 U.S. Dist. LEXIS 12141 at *15 (N.D. Ill. Aug. 11, 1992) (class notice sufficient where it "may be understood by the average class member") (citation omitted); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450, 496 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3rd Cir. 1998); *MCL 3d* § 30.212. Accordingly, the planned notice program is not only the best practicable, but is comprehensive and far-reaching. By any measure the proposed notice plan meets and exceeds all of the requirements of due process and Rule 23.

## CONCLUSION

For the foregoing reasons, the Court should: (1) grant preliminary approval to the Settlement; (2) certify the proposed Settlement Class; (3) schedule a fairness hearing to consider

granting final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;
(4) approve the form and content of the Notice and Summary Notice; and (5) direct that notice be
provided to the Settlement Class.

DATED:  January 31, 2003                    Respectfully submitted,

                                            **WOLF HALDENSTEIN ADLER**
                                            **FREEMAN & HERZ LLC**


                                            Adam J. Levitt
                                            656 West Randolph Street, Suite 500W
                                            Chicago, IL  60661
                                            Tel:  (312) 466-9200
                                            Fax:  (312) 466-9292

                                            *FARMER PLAINTIFFS' LIAISON COUNSEL*

                                            **COHEN, MILSTEIN, HAUSFELD**
                                            **& TOLL, P.L.L.C.**
                                            Herbert E. Milstein
                                            Richard S. Lewis
                                            Victoria S. Nugent
                                            1100 New York Avenue, N.W.
                                            West Tower, Suite 500
                                            Washington, DC  20005-3934
                                            Tel:  (202) 408-4600
                                            Fax:  (202) 408-4699

                                            **MILBERG WEISS BERSHAD**
                                            **HYNES & LERACH LLP**
                                            Melvyn I. Weiss
                                            Robert A. Wallner
                                            Deborah M. Sturman
                                            Kim M. Levy
                                            One Pennsylvania Plaza
                                            New York, NY  10119
                                            Tel:  (212) 545-4600
                                            Fax:  (212) 868-1229

                                            **SEEGER WEISS LLP**

25



Stephen A. Weiss
Diogenes P. Kekatos
Seth A. Katz
One William Street
New York, NY 10004
Tel: (212) 584-0700
Fax: (212) 584-0799

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
David A.P. Brower
Daniel W. Krasner
Katherine B. DuBose
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 545-4653

*FARMER PLAINTIFFS' CO-LEAD COUNSEL*